## BELL v. DISTRICT OF COLUMBIA.

(Court of Appeals of District of Columbia. Submitted January 4, 1921. Decided April 4, 1921.)

### No. 3412.

District of Columbia ☞22—Statute prohibiting public vehicles from loitering near hotels held inapplicable to taxicabs furnished for hotel's use.

Act July 11, 1919, § 12, making it a misdemeanor for public cabs and vehicles to loiter around or in front of hotels, etc., and authorizing the Commissioners of the District of Columbia to revoke the license of any driver convicted of a violation thereof, did not apply to a taxicab stationed

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

near a hotel under a contract by the taxicab company to furnish vehicles for the exclusive use of the hotel and its guests, where the taxicab company was under the jurisdiction of the Public Utilities Commission and not of the District Commissioners, and the driver was not licensed under Act July 1, 1902, § 7, par. 11; the taxicabs being taxed under paragraph 13.

Smyth, Chief Justice, dissenting.

In Error to the Police Court of the District of Columbia.

Richard Bell was convicted of willfully loitering with a vehicle near a hotel, and he brings error. Reversed and remanded, with instructions.

G. Thomas Dunlop, of Washington, D. C., for plaintiff in error.

F. H. Stephens and Ringgold Hart, both of Washington, D. C., for the District of Columbia.

HITZ, Acting Associate Justice. This case comes to this court from the police court on a writ of error duly allowed.

The plaintiff in error, hereinafter called the accused, was prosecuted in the police court upon an information filed by the corporation counsel containing two counts. The first count charged that the accused, being the driver of a certain public vehicle, to wit, an automobile, did willfully loiter with said public vehicle in front of the Shoreham Hotel, by stopping said public vehicle in front of said hotel, which stopping was not for the purpose of taking on or discharging a passenger, in violation of an act of Congress. The second count is the same as the first, except that it does not charge that the automobile was a public vehicle.

Upon a plea of not guilty the case was presented and heard in the court below upon an agreed statement of facts, and in pursuance of a written opinion, which is in the record, the judge of the police court entered a judgment of guilty, imposing a fine, and in default of payment thereof a term of imprisonment.

The agreed statement of facts stipulates that the accused was a chauffeur employed and paid by the Terminal Taxicab Company, and that the offense charged in the information was an alleged violation of section 12 of the Act of Congress of July 11, 1919 (41 Stat. 104), which is as follows:

"That the loitering of public cabs and hacks or vehicles of all description around or in front of the hotels, theaters, or public buildings in the District of Columbia, either by stopping, except to take on or discharge a passenger, or unnecessarily slow driving, is hereby prohibited, and any driver of any such cab or hack who willfully causes the same to loiter either by stopping or slow driving as aforesaid shall be deemed guilty of a misdemeanor and punished in the police court of the District of Columbia by a fine of not less than $10 or more than $40 for such offense. The Commissioners of the District of Columbia are hereby authorized and empowered to make any regulation that may be necessary in furtherance of the purpose of this section, and are hereby given authority to revoke the license of the driver of any public hack or cab who is convicted of a violation of this section."

The agreed statement concedes that a taxicab owned by the Terminal Taxicab Company, of which the accused was chauffeur, stood against

the west curb of Fifteenth street and 15 feet north of the main entrance to the Shoreham, but in front of and on a portion of the street adjacent to said hotel; that he did not discharge a passenger upon arrival at the point in question, and while so standing he had no definite or ascertained passenger in view, but was standing at said location under orders from and authority of the owners of said hotel, for the accommodation of any of its guests who might apply to the manager or taxicab clerk of the hotel for cab service in accordance with a contract between the Terminal Taxicab Company and the Hotel Company, dated September 5, 1917, and to continue in force for 10 years.   By its terms the Taxicab Company, for an agreed consideration, undertook to furnish certain automobiles or taxicabs, with chauffeurs to operate the same in the livery service of the hotel, for its exclusive use and that of its guests and patrons; the service to be under the control of the hotel, and the vehicles to be stationed in such of the streets on which the hotel had entrances as it should designate, subject to the street and traffic regulations of the District of Columbia; the hotel to provide on its premises an office for the business of letting the vehicles to its patrons exclusively.   Certain requirements as to the repair and proper equipment of the machines and the storage thereof when not in use, at the expense of the Taxicab Company, are included in the contract.   The cab of which the accused was in charge at the time of his arrest was furnished by the Taxicab Company under this agreement, and was subject to immediate call by and use of the hotel guests exclusively.   The stipulation further shows that the number of cabs so to be furnished did not exceed reasonable provision for the demand made by the guests for such accommodations.

The cab in question was not licensed as a public hack, or other vehicle, under the provisions of paragraph 11 of section 7 of the Act of Congress of July 1, 1902 (32 Stat. 624), known as the "License Tax Act."   This paragraph requires owners of passenger vehicles for hire to pay certain license taxes—automobiles, $9 per annum—and the driver thereof to wear a conspicuous badge, numbered to correspond with the license of his vehicle.   Paragraph 13 of this act, under which the Terminal Taxicabs are taxed, requires the owners to pay $25 per annum for 10 vehicles, or less, and $2 additional for each vehicle in excess of that number, and the cab driven by the accused was taxed under this latter paragraph; the driver having no license and wearing no badge.

The assignments of error, five in number, claim that the trial court erred in holding that the term "public vehicle," in section 12, already quoted, included the cab here involved; in holding that said section forbids the cab in question from standing in front of and around the hotel; that the judgment was erroneous as matter of law, considered in connection with the agreed facts; in holding that the section did not have the effect of impairing the contract referred to in the stipulation; and, finally, in holding that the Taxicab Company is estopped from complaining that any reasonable regulation operates to impair the contract.

In the opinion of this court, under the conceded facts, the case is to be disposed of by a determination of the meaning of section 12 of the

act under which the information is filed. In considering the question as to whether the cab here involved can be included within the purview of the section, it is to be observed that there are two provisions which appear to be inconsistent with that view.

The first is that the Commissioners of the District, as such, are empowered to make any necessary regulations in furtherance of the purpose of the section, although, by a decision of the Supreme Court in Terminal Taxicab Co. v. Kutz, 241 U. S. 253, 36 Sup. Ct. 583, 60 L. Ed. 984, Ann. Cas. 1916D, 765, decided in 1916, that company, in its use of these cabs, was held to be a common carrier and under the jurisdiction of the Public Utilities Commission, and not under the Commissioners of the District of Columbia.

The second is that the District Commissioners are given authority to revoke the license of the driver of any public cab who is convicted of loitering, while the fact is that the accused had no license; his cab, as already shown, being taxed under paragraph 13, and not under paragraph 11, of the "License Tax Act."

Holding, as we do, that the cab driven by the accused, under the stipulation of facts, is not of the class embraced in section 12, it becomes unnecessary to pass upon any of the other questions raised by the assignments of error.

The result is that the judgment below must be reversed, with costs, and the case remanded to the police court, with instructions to enter a judgment of not guilty on the agreed statement of facts.

Mr. Justice HITZ, of the Supreme Court of the District of Columbia, sat in the place of Mr. Justice ROBB in the hearing and determination of this appeal.

SMYTH, Chief Justice. This court and the Supreme Court of the United States have said that the Terminal Taxicab Company is a common carrier. District of Columbia v. Fickling, 33 App. D. C. 371; Terminal Taxicab Company, Incorporated, v. Commissioners of the District of Columbia, 241 U. S. 252, 36 Sup. Ct. 583, 60 L. Ed. 984, Ann. Cas. 1916D, 765. Being a common carrier, its cabs must be public ones. It cannot be that a cab used by a common carrier in the transaction of its business is a private cab. The cabs, therefore, of the Terminal Company, clearly come within the terms of the first sentence of section 12 of the act of Congress under review (41 Stat. 104), unless a consideration we are about to examine places them outside.

The section has only two sentences. The second gives to the Commissioners of the District "authority to revoke the license of the driver of any public hack or cab who is convicted of a violation of this section." Paragraphs 11 and 13 of section 7 of an Act of Congress approved July 1, 1902 (32 Stat. 624), deal with the licensing of public hacks. It is said that paragraph 11 requires that the drivers of public hacks shall be licensed, but that paragraph 13, under which the Terminal Company's cabs are licensed, does not require that the drivers shall be licensed. From this it is argued that, since the second sentence of section 12 gives to the Commissioners authority to revoke the license of drivers in certain cases, it must refer to cabs licensed under paragraph

11, and not to those licensed under paragraph 13, and this indicates conclusively that the first sentence does not include the Terminal Company's cabs; in other words, that it shows very clearly that Congress, notwithstanding the very sweeping language which it used in the first sentence, had in mind only such cabs as those whose drivers were licensed. This argument, it seems to me, is rather attenuated. It presents a fragile base on which to rest the contention that Congress, when it wrote in the first sentence that the "loitering of *public cabs* and hacks or vehicles of *all* descriptions," etc., was prohibited, did not mean all public cabs, but only some of the public cabs in the city.

But a more serious defect in the argument is this: That paragraph 11, notwithstanding the statement to the contrary, does *not* require the drivers of vehicles to which it relates to be licensed. It says "that the proprietors or owners of hacks," etc., shall pay license, and that the driver of each hack shall wear a badge "numbered to correspond with the license of his vehicle." If a license is revoked under the authority given to the Commissioners, it must be the license of the owner, not of the driver; and this may apply to a license issued under paragraph 13, as well as to one issued under paragraph 11.

Moreover, by the construction which the court places upon the first sentence of section 12, it attributes to Congress an intention to discriminate between the public hack owners of the city. Under that construction, one class of public hackers may not loiter on the public streets, while the other may do so with impunity. It must be remembered that the purpose of the section is to regulate the use of the public streets, in the interest of the public generally. A loitering cab, licensed under paragraph 13, is, so far as the record discloses, just as much of an interference with the public safety as one licensed under paragraph 11. There is, therefore, no reason why Congress should restrict the driver of the one and leave the driver of the other free to loiter as much as he wills.

It is further urged that the Terminal Company's cabs are under the control of the Public Utilities Commission, and from this an argument is deduced in favor of the construction adopted by the court. But are not all other public cabs, being common carriers, under the control of the Public Utilities Commission? Besides, there is no inconsistency between the power vested by the sentence in the Commissioners and that conferred upon the Public Utilities Commission. The latter has to do with the regulation of rates, service, etc., of public carriers, while the power conferred upon the Commissioners by the second sentence has to do with the use of the public streets—quite a different thing.

From whatever angle I approach the subject, I am unable to think that Congress did not mean exactly what it said when it wrote the first sentence of section 12 and therefore I must dissent.